IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

LA'JADE EVANS,

      Plaintiff,

v.                                                                    CASE NO. 1:21-cv-110-MW-GRJ

MICKAELA BAILEY, et al.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

      Pending before the Court is the Third Amended Complaint

("Complaint") filed by *pro se in forma pauperis* Plaintiff, La'Jade Evans

("Evans"), challenging the Florida state court's sheltering placement of her

minor son, as well as the State's subsequent termination of her parental

rights.  ECF No. 12 at 43-50.  In the Complaint, Evans alleges that the

Secretary of the Florida Department of Children and Family Services,[1] the

President of and the Partnership for Strong Families, the President of the

Florida Foster/Adoptive Parent Association,[2] and two individual social

---

[1] Had she stated a Section 1983 claim, Evans claims against the Secretary of the Florida Department of Children and Family Services are limited to "prospective injunctive or declaratory relief for ongoing constitutional violations".  *Hayes v. Sec'y, Fla. Dep't of Children and Families*, 563 F. App'x 701, 704 (11th Cir. 1014).

[2] Were she to state a Section 1983 claim against the private actors named in this lawsuit, Evans would need to satisfy one of the following three tests:

workers[3] unlawfully placed her son, DJ, in protective custody in violation of Evans' constitutional rights, the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act of 1973 ("RA"). Evans further alleges that Defendants violated her constitutional and federal rights when the State terminated her parental rights.

Upon careful consideration, the Court concludes that this case should be dismissed with prejudice on the grounds that the relief Evans seeks (the overturning of the state court's child custody judgment) is barred by *Rooker-Feldman*,[4] and because Evans' reviewable federal causes of action

--------------------

> (1) the public function test; (2) the state compulsion test; and (3) the nexus/joint action test. The public function test limits state action to instances where private actors are performing functions "traditionally the exclusive prerogative of the state." The state compulsion test limits state action to instances where the government "has coerced or at least significantly encouraged the action alleged to violate the Constitution." The nexus/joint action test applies where "the state has so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise."

*Willis v. Univ. Health Servs., Inc.*, 993 F.2d 837, 840 (11th Cir. 1993) (quoting Nat'l Broadcasting Co., Inc. v. Communications Workers of America, AFL-CIO, 860 F.2d 1022, 1026 (11th Cir. 1988).

[3] Defendant Staci Barb was a social worker supervisor at the Partnership for Strong Families during the relevant time-period. Defendant Mickeala Bailey was a social worker for the agency at the time. ECF No. 12 at 3.

[4] "The *Rooker–Feldman* doctrine makes clear that federal district courts cannot review state court final judgments because that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court." *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482, 103 S.Ct. 1303, 1315, 75 L.Ed.2d 206 (1983)). *See also, Staley v. Ledbetter*,

do not state a claim upon which relief may be granted and, therefore, must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## I.   PROCEDURAL HISTORY

Evans initiated this action on June 21, 2021, by filing a Complaint and Request for Injunction against twenty-two (22) Defendants whom Evans alleged physically abused and neglected her minor child, causing Evans emotional trauma and financial ruin.  ECF No. 1 at 5.  Evans attempted to bring her claims under a variety of state and federal laws, but some of them failed to display on her pleading because of the electronic format she used. *See* ECF No. 1 at 3.II.A.

Evans also sought leave to proceed as a pauper in this lawsuit, ECF No. 2, which the Court granted, ECF No. 4.  In the Order granting Evans *in forma pauperis* status, the Court directed Evans to cure the many deficiencies in her Complaint, explaining the limited jurisdiction of a federal court to review state-court custody proceedings and the abstention doctrines that might prevent review altogether.  *Id*.  Evans was allowed to amend her Complaint using the appropriate *pro se* plaintiff civil complaint form and directed to comply with the Court's instructions.  *Id*. at 13-14.

---

837 F.2d 1016, 1018 (11th Cir. 1988) (per curiam) ("The federal courts are not a forum for appealing state court decisions" in termination of parent rights Section 1983 case).

One of Court's instructions ordered Evans to "disclose the case number and court along with information about whether the state-court proceedings complained of are ongoing or final, so that the Court can determine if it can exercise jurisdiction over [Evans'] claims."  ECF No. 4 at 13.

Evans subsequently filed a First Amended Complaint, substantially reducing the number of named Defendants (from 22 to 3) and attempting to raise only federal claims.  ECF No. 5 at 2-3, 4.  This time, Evans' claims stemmed from Jocelyn Weston's (1) failure to conduct an initial well-care check before removing DJ from Evans' custody; and (2) Shands Hospital's holding Evans and her son against their will. [5]  *Id*. at 6-7.  For relief, Evans requested the Court to order a re-investigation of her child custody case and that DJ be placed with her family.  *Id*. at 7.  Because Evans failed to disclose the state court case number or status of the state-court child custody proceeding as directed by the Court, the Court ordered her to show cause as to why she failed to do so, or face dismissal.  ECF No. 6.

Rather than comply with the Court's order, Evans filed an "Urgent Petition for Issuance of a Warrant to Take Physical Custody of a Child." ECF No. 7.  In the Petition, Evans expanded on her allegations surrounding

---

[5] Neither Jocelyn Weston nor Shands Hospital was named a Defendant in the amended complaint. *See* ECF No. 5 at 2-3.

the state's removal of DJ from her custody and alleged that DJ was

removed from her custody in violation of her Fourth Amendment and Due

Process rights.  *Id*. at 10.  For relief, Evans asked the Court to authorize

law enforcement to take physical custody of DJ, remove him from the

custody of Defendant Amanda Cruce, and place him into the custody of

one of DJ's immediate family members.  *Id*. at 11.  Once again, Evans

failed to provide information about the state court, case number, or status

of the child-custody proceedings as ordered by the Court.  Consequently,

the Court struck the Petition and issued a Second Show Cause Order. ECF

No. 8.

In the Second Show Cause Order, the Court warned Evans that

failure to amend her pleading and disclose the court-ordered information

would be treated as willful defiance resulting in dismissal if she did not

comply by November 15, 2021.  *Id*. at 3.  On November 16, 2021, Evans

filed a Second Amended Complaint, ECF No. 9, and a Response to the

Court's Show Cause Order, ECF No. 10.  In the Response, Evans

disclosed the case number for the original child custody proceedings as

well as the case number on appeal, but Evans still failed to inform the Court

whether the state court proceedings had concluded or were still pending.

ECF No. 10 at 2.

In its final Order to Amend Complaint, to Notify the Court of the Current Status of State Court Custody Proceedings, and to Provide the Court with a Copy of Plaintiff's Termination of Parental Rights Order, the Court gave Evans one final opportunity to comply, explaining, once again, her pleading problems.  ECF No. 11.

On January 5, 2022, Evans filed a Third Amended Complaint, finally disclosing that the state-court child custody proceedings about which she complains in this lawsuit have concluded.  ECF No. 12.  She also provided the Court with a copy of the order terminating her parental rights.  ECF No. 12 at 43-51.  In this, the operative complaint, Evans asserts causes of actions arising under Section 1983 for violations of her Due Process and Equal Protection rights.  Further, she asserts claims arising under the ADA and Section 504 of the RA.  For relief, Evans seeks a declaration that the Florida Department of Children and Family Services violated her due process rights; a declaration that the Florida Department of Children and Family Services and the Partnership for Strong Families violated her equal protection rights; and a declaration that the Florida Department of Children and Family Services violated her rights under the ADA and Section 504 of the Rehabilitation Act.  In addition to declaratory relief, Evans seeks

monetary damages (compensatory and punitive) in the amount of $20

million for the alleged constitutional violations.  ECF No. 12 at 10.

## II.    STANDARD OF REVIEW

Because Evans is proceeding as a pauper, the Complaint is subject

to screening under the *in forma pauperis* statute.  As amended, 28 U.S.C. §

1915 reads in pertinent part as follows:

> (e)(2) Notwithstanding any filing fee, or any portion thereof, that
> may have been paid, the court shall dismiss the case at any
> time if the court determines that-
> * * *
> (B) the action or appeal-
> * * *
> (i) is frivolous or malicious;
> (ii) fails to state a claim on which relief may be granted; or
> (iii) seeks monetary relief from a defendant who is immune from
> such relief.

28 U.S.C. § 1915(e)(2)(B).  The standard for determining whether a

complaint states a claim upon which relief may be granted is the same

whether under 28 U.S.C. § 1915(e)(2)(B)(ii) or Federal Rule of Civil

Procedure 12(b)(6). *See Mitchell v. Farcass,* 112 F.3d 1483, 1490 (11th

Cir. 1997) ("The language of section 1915(e)(2)(B)(ii) tracks the language

of Federal Rule of Civil Procedure 12(b)(6)."). When reviewing complaints

pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the Court must apply the

standard of review set forth in Rule 12(b)(6), and the Court must accept as

true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom. *Id*.

The complaint may be dismissed if the plaintiff does not plead facts that do not state a claim to relief that is plausible on its face. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Watts v. FIU,* 495 F.3d 1289 (11th Cir. 2007). While a complaint attacked for failure to state a claim upon which relief can be granted does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 127 S.Ct. at 1964-65. The rules of pleading do "not require heightened fact pleading of specifics .... The Court's inquiry at this stage focuses on whether the challenged pleadings give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1964-65).

*Pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Estelle v. Gamble,*

*Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976)

(quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d

80 (1957)).  A complaint is "frivolous under section 1915(e) "where it lacks

an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S.

319, 325, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989); *Bilal v. Driver,*

251 F.3d 1346, 1349 (11 Cir. 2001). Dismissals on this ground should only

be ordered when the legal theories are "indisputably meritless," *id*., 490

U.S. at 327, or when the claims rely on factual allegations that are "clearly

baseless." *Denton v. Hernandez,* 504 U.S. 25, 32, 112 S.Ct. 1728, 1733,

118 L.Ed.2d 340 (1992).

## III.    DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of

a right secured by the Constitution and laws of the United States, and must

show that the alleged deprivation was committed by a person acting under

color of state law." *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101

L.Ed.2d 40 (1988) (citations omitted). Traditionally, acting under color of

state law "requires that the defendant in a § 1983 action have exercised

power possessed by the virtue of state law and made possible only

because the wrongdoer is clothed with the authority of state law." *Id.* at

49 (internal quotation marks and citation omitted).  That means a plaintiff

must allege that: (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the deprivation occurred under color of state law. *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010). "Persons" for Section 1983 purposes include individuals and municipalities and other local-government units, but do not include a state or an arm of a state. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

### A.    Plaintiff's Allegations.

Taking her allegations as true, Evans is a resident of Stockbridge, Georgia and the mother of four-year old DJ; although Evans resided in Jonesboro, Georgia at all times relevant to this lawsuit. ECF No. 12 ¶¶ 1-2, 11. Evans is also disabled. *Id.* ¶ 12. At the age of sixteen years old, Evans was raped. *Id.* ¶ 14. She was diagnosed with HIV at the age of nineteen. ECF No. 12 ¶ 14. Evans' HIV is being treated and she has maintained an undetectable HIV status since 2017. *Id.* ¶ 17. Evans gave birth to DJ on September 25, 2017, when she was twenty-five years old. *Id.* ¶ 20. DJ was born premature at 30 weeks and 6 days gestation, and he weighed 4 lbs. 9 oz. *Id.* ¶ 21. DJ was diagnosed with kidney renal failure, posterior urethral valves, hydronephrosis due to congenital obstruction of uteropelvic junction (UPJ). ECF No. 12 ¶ 22. To address these health

issues, DJ received a vesicostomy with in the NICU, where he spent 54 days.  *Id.* ¶ 23, 24.

On December 6, 2017, DJ was admitted to Shands Hospital because he had stopped breathing for unknown reasons.  He was discharged on December 15, 2017. *Id.* ¶ 26.  About one year later, DJ suffered two separate adverse reactions to prescribed medications, one because the medication was prescribed in error and the other for unexplained reasons. *Id.* ¶ 29-36.  As Shands Hospital staff looked into the second adverse drug reaction, hospital staff held Evans and DJ against their will from December 3-10, 2019.  *Id.* ¶ 36.  On December 10, 2019, Evans was arrested and charged with medical neglect without great bodily harm to a child under 12, and DJ was taken into state protective custody. *Id.* ¶ 37, 39.

On December 11, 2019, while Evans was incarcerated, Defendants held an "expedited shelter hearing" regarding DJ's placement without Evans' knowledge in violation of Fla. Stat. § 39.402.  DJ was placed into the care of Defendant Amanda Cruce, President of the foster and adoption care program for the State of Florida from that date to the present. *Id.* ¶ 41.

During the removal process, DJ's family was never contacted for placement even though an approved home study had been completed by DJ's aunt, who is an LPN.  ECF No. 12 ¶ 42.  The home study conducted

by Defendant Michaela Bailey stated that Evans did not understand the severity of DJ's medical needs. *Id.* ¶ 43.  DJ's great aunt and uncle also had an approved home study for placement, but the Guardian *ad litem* filed a motion with the court stating that he did not want DJ placed with anyone other than Defendant foster parent Amanda Cruce and her wife, Deena.  *Id.* ¶ 44. Since DJ's removal from the care of his mother, he has suffered serious medical setbacks, requiring hospitalization, and is "at risk of death due to metabolic acidosis." *Id.* ¶ 47-8.

On December 28, 2020, Judge James P. Nilon, of the Eighth Judicial Circuit in Alachua County, Florida, terminated Evans' parental rights, noting that although Evans loves her son, her own disabilities prevent her from meeting his needs. *Id.* ¶ 50.

In light of these allegations, the Court must analyze each of Evans' federal claims to determine whether there is a basis for this case to proceed, or whether the case must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

*Rooker-Feldman* bars any attempt by Evans to have this Court overturn the state court's determination that DJ should be removed from her custody and placed elsewhere.  *Behr v. Campbell*, 8 4th 1206, 1213 (11th Cir. 2021).  This Court can review, however, Evans' allegations that

her constitutional and federal rights were violated during the state-court

child custody proceedings that resulted in DJ's removal. *Id.* After careful

review, the Court concludes that Evans has failed to allege her federal

rights were violated.

1.    *Procedural Due Process Claims.*

Evans' procedural due process claims are straightforward—(1)

Defendants removed her child from her custody, while she was

incarcerated, without giving her notice and an opportunity to be heard; and

(2) Defendants terminated her parental rights in violation of the law.

Procedural due process questions are examined in two steps.

*Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904,

1908, 104 L.Ed.2d 506 (1989). The first step is determining whether there

exists a liberty or property interest with which the State has interfered. *Id.*

(*citing Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571, 92

S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972)). The second step examines

whether the procedures attendant upon that deprivation were

constitutionally sufficient. *Kentucky Dep't of Corrections*, 490 U.S. at 459,

109 S.Ct. at 1907-08 (*citing Hewitt v. Helms*, 459 U.S. 460, 472, 103 S.Ct.

864, 871-72, 74 L.Ed.2d 675 (1983)). Liberty interests protected by the

Fourteenth Amendment may arise from two sources—the Due Process

Clause itself and the laws of the States. *Hewitt*, 459 U.S. at 466, 103 S.Ct. at 869 (*citing Meachum v. Fano*, 427 U.S. 215, 223-27, 96 S.Ct. 2532, 2537-40, 49 L.Ed.2d 451 (1976)).

Evans contends that she had a liberty interest of entitlement to notice and a judicial hearing pursuant to Fla. Stat. § 39.402 prior to being deprived of custody of DJ.  Section 39.402 provides, in pertinent part, that:

> (1) Unless ordered by the court under this chapter, a child taken into custody shall not be placed in a shelter prior to a court hearing unless there is probable cause to believe that:
> (a) The child has been abused, neglected, or abandoned, or is suffering from or is in imminent danger of illness or injury as a result of abuse, neglect, or abandonment;

Fla. Stat. § 39.402.  Under this statute, Evans' situation falls within the exception to the hearing requirement as she admits that she was arrested the day before DJ's sheltering placement on charges of child neglect. Accordingly, Evans had no protected liberty interest in a hearing regarding her child's shelter placement while she was in custody on child neglect charges.

And, with respect to the termination of parental rights proceedings, the state court judge who presided over the case stated that Evans "was present at each hearing with counsel…" and that she was "properly noticed" about the trial.  ECF No. 12 at 44. Thus, procedural due process was satisfied.

As to the State's termination of Evans' parental rights, to be constitutional, the State was required to support its allegations of child abuse and/or neglect by "clear and convincing evidence." *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). In the Order terminating Evans' parental rights, ECF No. 12 at 43-50, the court found "by clear and convincing evidence" — after two days of hearings during which Evans and her relatives testified — that "Lajade Evans has engaged in a course of conduct towards [DJ] that demonstrates that the continuing involvement of the mother in the parent-child relationship threatens the life, safety well-being or physical, mental or emotional health of [DJ]…." *Id*. at 45 ¶ 15. Notably, the court found by "clear and convincing evidence" that Evans' "actions have jeopardized [DJ's] chance of receiving a transplant." *Id*. at 47 ¶ 15h.

> [Evans] testified that she was hospitalized because she did not take her own HIV medication. She testified that she did not agree with the medical professionals treating [DJ] that he was hospitalized in a life-threatening condition, that he had lost one quarter of his body weight in December of 2019, and that she had missed 19 appointments. Her testimony was a complete contradiction of the testimony of all of the experts, yet she admitted that in August of 2019 and December of 2019, she took [DJ] to no appointments at Shands or elsewhere, too long a period according to providers…. [Evans] has been unable to provide for [DJ's] medical needs his entire life and demonstrated a complete lack of insight into his condition and needs.

ECF No. 12 at 47 ¶ 15h.

Further, a testifying psychiatrist diagnosed Evans with "Borderline Intellectual Functioning and Narcissistic Personality traits" manifested in a "sense of entitlement and self-importance, a disregard for the safety of self and others" such that Evans "expressed no empathy for [DJ] or his condition and took no responsibility for cancelling or missing appointments." *Id.* at 48 ¶ 15i. Finally, the court found by "clear and convincing evidence" that "termination of parental rights is in the manifest best interest of … [DJ]" and that "termination of parental rights is the least restrictive means to protect … [DJ] from harm." *Id.* at 48 ¶ 16.

In sum, because the State applied the correct legal standard ("clear and convincing evidence") when terminating Evans' parental rights, she has no procedural due process claim here.

   2.   *Substantive Due Process Claims.*

A parent may also have a substantive due process claim related to the removal of his or her child from his or her custody. "Parents have a substantive right under the Due Process Clause to remain together with their children without the coercive interference of the awesome power of the state." *Southerland v. City of New York,* 680 F.3d 127, 142 (2d Cir. 2012) (quoting *Tenenbaum v. Williams,* 193 F.3d 581, 600 (2d Cir.

1999)) (internal quotation marks omitted). This right, however, is "counterbalanced by the compelling governmental interest in the protection of minor children, particularly in circumstances where the protection is considered necessary as against the parents themselves." *McCaul v. Ardsley Union Free Sch. Dist.,* Case No. 12-CV-2300, 2013 WL 673751, at *1 (2d Cir. Feb. 26, 2013) (quoting *Southerland,* 680 F.3d at 152).

A parent's substantive due process claim "can only be sustained if the removal of the child would have been prohibited by the Constitution even had the parents been given all the procedural protections to which they were entitled." *Southerland,* 680 F.3d at 142 (citation and internal quotation marks omitted). Thus, "while a procedural due process claim challenges the procedure by which a removal is effected, a substantive due process claim challenges the fact of the removal itself." *Id.* (citation omitted).

"To state a claim for a violation of this substantive due process right of custody, a plaintiff must demonstrate that the state action depriving her of custody was so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." *Trombley v. O'Neill*, 929 F. Supp. 2d 81, 96 (N.D.N.Y. 2013) (citations and internal quotation marks omitted).

In the present case, none of Evans' allegations approach this standard of shock, arbitrariness or egregiousness.  In fact, many of the exhibits attached to the Complaint reveal a thoughtful, methodical, noticed series of hearings and events that culminated in the termination hearing, where Evans was present and represented by counsel. *See* ECF No. 12 at 14 (June 29, 2020 Department of Children and Families Notice of Denied Home Study of Evans' great aunt, Ms. Bush, due to "Ms. Bush's lack of understanding of the child's severe medical needs, her inability to articulate a realistic plan for his care, and a lack of understanding as to why the department is involved");  ECF No. 12 at 34 (March 20, 2021 Guardian ad Litem Motion, requesting the Court to order the Department of Children and Families not to investigate further biological family applicants for adoption due to DJ's need for "immediate life-saving/extending medical treatment", *id*. at 36); and ECF No. 12 at 43-51 (December 9, 2020, Order on the Adjudicatory Hearing on the Department of Children and Family Services' Petition for Termination of Parental Rights, considering eighteen (18) exhibits along with the testimony of nine (9) Department witnesses, one (1) witness for the Guardian ad litem program, and Evans and her two (2) witnesses).

In sum, Evans has no due process claim (procedural or substantive) for either the initial sheltering placement of DJ while she was incarcerated, or for the State's termination of her parental rights.

## B.   Equal Protection Claims.

The gist of Evans' equal protection claim is that Defendants discriminated against her by terminating her parental rights because of her HIV status and because she suffers from mental and physical disabilities. ECF No. 12 at 7-8.

The Equal Protection Clause of the Fourteenth Amendment, which provides that "no State shall ... deny to any person within its jurisdiction the equal protection of the laws", US Const. XIV § 1, "requires the government to treat all similarly situated individuals alike." *Young v. Suffolk Cty.*, 705 F. Supp. 2d 183, 204 (E.D.N.Y. 2010) (*citing City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)).  To state a claim for an equal protection violation, a plaintiff must allege that a government actor intentionally discriminated against her on the basis of race, national origin or gender." *Hayden v. Cty. of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999), overruled in part on other grounds by *Gonzaga Univ. v. Doe*, 536 U.S. 273, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002).

However, "an individual not alleging invidious discrimination on the

basis of membership in some group may nevertheless prevail on an equal protection claim under the 'class of one' theory recognized by the Supreme Court in *Willowbrook v. Olech*, 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000)."  "Under a 'class of one' equal protection claim, a plaintiff must allege that (1) she has been intentionally treated differently from others similarly situated and (2) there is no rational basis for the difference in treatment."  *Id*. at 564, 120 S.Ct. at 1075 (citations omitted). To allege a violation of the Equal Protection Clause, "it is axiomatic that plaintiff must allege that similarly situated persons were treated differently." *Gagliardi v. Village of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994).

In the present case, Evans does not allege that Defendants treated her differently from other similarly-situated persons— that is, other parents who neglected their chronically ill children.  And, although Evans' HIV status and her mental and physical disabilities played a role in the removal process, that was because both conditions negatively impacted her ability to properly care for her child.  It is evident from the court's termination order, ECF No. 43-52, that Evans was not capable of caring for her son to such an extent that his life was in danger.  Basing the decision to terminate Evans' parental rights on her inability to care for her son (because of her disabilities and HIV status) did not deprive Evans of equal protection under

the law.  Instead, the court appropriately acted in the best interests of the child.  Accordingly, Evans has no equal protection claim.

### C.    ADA and Section 504 Claims.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  Because of the similarities between Title II and Section 504, "[d]iscrimination claims under the Rehabilitation Act are governed by the same standards used in ADA cases." *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000). To state a claim under Title II of the ADA or Section 504 of the RA, "a plaintiff must allege: (1) that he is a 'qualified individual with a disability;' (2) that he was 'excluded from participation in or ... denied the benefits of the services, programs, or activities of a public entity' or otherwise 'discriminated [against] by such entity;' (3) 'by reason of such disability.'" *Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001) (quoting 42 U.S.C. § 12132. "To prevail on a claim for compensatory damages under either the RA or the ADA, a plaintiff must show that a defendant violated his rights under the statutes and did so with discriminatory

intent." *McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1146-47 (11th Cir. 2014) (citations omitted).

In this case, Evans complains that Defendants denied her a "reasonable accommodation" for her disabilities when rendering their decisions regarding DJ's sheltering placement and when terminating her parental rights.  ECF No. 12 at 9.  Such allegations do not fall within the protections of the ADA or the RA.  Although Evans very well be a "qualified individual with a disability", Defendants did not deny her any public benefits or services when they removed DJ from her custody.  Moreover, the record reflects that rather than excluding Evans from the process, she and her relatives were included at all stages of the proceedings from the investigative stage through the termination proceedings.  Finally, Evans fails to show that the removal of her child was based on discriminatory intent.  Again, the record reflects that the sole motivating force behind DJ's removal was that it was in his best interest.  Consequently, Evans has no ADA or RA claim.

### D.    Futility of Further Amendment.

The Eleventh Circuit has made clear that courts should refrain from dismissing *pro se* complaints for failure to state a claim where a redrafted pleading could plausibly cure the complaint's deficiencies. "Where it

appears a more carefully drafted complaint might state a claim upon which relief can be granted," a *pro se* plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action. *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), overruled in part, *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541 (11th Cir. 2002) (en banc). This rule admits of only two exceptions: "(1) where the plaintiff has indicated that she does not wish to amend her complaint; and (2) where a more carefully drafted complaint could not state a claim and is, therefore, futile." *Carter v. HSBC Mortg. Servs., Inc.*, 622 F. App'x 783, 786 (11th Cir. 2015) (per curiam) (citation omitted).

In this case the Court afforded Evans three opportunities to amend her complaint. Therefore, at this point further amendment would be futile.

## CONCLUSION

Because federal courts are courts of limited jurisdiction, particularly when it comes to reviewing actions related to state-court child custody proceedings, the undersigned has carefully examined Plaintiff's federal claims to see whether they are viable. Although the loss of one's parental rights is tragic for all affected, the State of Florida fulfilled its constitutional obligations to Plaintiff when it removed her minor child from her custody and terminated her parental rights.

Consequently, after due consideration, the undersigned respectfully

**RECOMMENDS** that this case should be **DISMISSED** for failure to state a

claim as required by 28 U.S.C. § 1915(e)(2)(B)(ii).

**IN CHAMBERS** in Gainesville, Florida this 13th day of May 2022.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PLAINTIFF

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**